IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF UTAH

| | |
|---|---|
| OVERSTOCK.COM, INC., a Delaware corporation,<br><br>               Plaintiff,<br><br>v.<br><br>NOMORERACK.COM, INC., a Delaware corporation,<br><br>               Defendant. | MEMORANDUM DECISION AND ORDER DENYING PLAINTIFF'S MOTION FOR PRELIMINARY INJUNCTION AND GRANTING DEFENDANT'S MOTION FOR LEAVE TO FILE SURREPLY<br><br><br>Case No. 2:13-CV-1095 TS<br><br>District Judge Ted Stewart |

This matter is before the Court on Plaintiff's Motion for Preliminary Injunction.[1] Also before the Court is Defendant's Motion for Leave to File Surreply.[2] The Court will grant Defendant's Motion for Leave to File Surreply and will consider Defendant's Surreply, as well as the arguments made by both parties with respect to that Motion. Having considered the evidence and arguments presented by the parties, the Court will deny Plaintiff's Motion for Preliminary Injunction for the reasons set forth below.

I. BACKGROUND

Plaintiff Overstock.com is an online discount retailer that sells a variety of products in a range of categories. Plaintiff also offers services, including car buying and pet adoption services. Plaintiff offers more than one million products and over six million different customers made purchases from Overstock.com in the last year. "Overstock's product offerings range from a

---

[1] Docket No. 29.

[2] Docket No. 47.

1

$5.00 nail polish to a one-of-a-kind handmade Persian rug for hundreds of thousands of dollars."[3]

Defendant owns and operates Nomorerack.com, which also provides a number of discounted consumer goods and directly competes with Plaintiff. Defendant has 18.1 million members and, since its founding, has sold more than $420 million worth of products to nearly 5.2 million customers.

Plaintiff owns numerous federally registered trademarks and service marks comprising the term Overstock.com. Plaintiff uses and markets these marks in its advertising. In some of its advertisements, Defendant uses the term "overstock." The precise use of that word by Defendant is discussed in more detail below. Plaintiff seeks to enjoin Defendant from using its marks.

## II. PRELIMINARY INJUNCTION STANDARD

To obtain a preliminary injunction, the moving party must demonstrate: "(1) a likelihood of success on the merits; (2) a likelihood that the movant will suffer irreparable harm in the absence of preliminary relief; (3) that the balance of equities tips in the movant's favor; and (4) that the injunction is in the public interest."[4] "A preliminary injunction is an extraordinary remedy; it is the exception rather than the rule."[5]

"Three types of preliminary injunctions are specifically disfavored: (1) preliminary injunctions that alter the status quo; (2) mandatory preliminary injunctions; and (3) preliminary injunctions that afford the movant all the relief that it could recover at the conclusion of a full

---

[3] Docket No. 29, at 11.

[4] *RoDa Drilling Co. v. Siegal*, 552 F.3d 1203, 1208 (10th Cir. 2009).

[5] *GTE Corp. v. Williams*, 731 F.2d 676, 678 (10th Cir. 1984).

trial on the merits."[6]  "For these categories of disfavored preliminary injunctions, 'the movant has a heightened burden of showing that the traditional four factors weigh heavily and compellingly in its favor before obtaining a preliminary injunction.'"[7]  Plaintiff admits that it seeks a disfavored injunction and therefore must meet this higher standard of proof.[8]

### III.  DISCUSSION

Prior to addressing the parties' arguments, the Court notes that both parties have raised various evidentiary objections.  Defendant argues that Plaintiff's Motion is based, in part, on evidence that was not properly disclosed.  Plaintiff, in turn, argues that some of Defendant's evidence should be disregarded because it is conclusory, lacks foundation, and is contrary to deposition testimony.

The Court need not specifically rule on these evidentiary objections.  The vast majority of the evidence objected to by both parties has limited relevance.  Further, to the extent that the Court has considered this evidence, it does not materially alter the Court's analysis.  Therefore, the Court will proceed to the parties' primary arguments.

A. LIKELIHOOD OF SUCCESS

Plaintiff seeks injunctive relief under its Lanham Act claims for trademark infringement and unfair competition.[9]

---

[6] *Fundamentalist Church of Jesus Christ of Latter-Day Saints v. Horne*, 698 F.3d 1295, 1301 (10th Cir. 2012).

[7] *Id.* (quoting *Dominion Video Satellite, Inc. v. EchoStar Satellite Corp.*, 269 F.3d 1149, 1154 (10th Cir. 2001)).

[8] Docket No. 39, at 26.

[9] *See* 15 U.S.C. §§ 1114, 1125(a).

To prevail on its claim, Plaintiff must show: (1) that its mark is protectable, (2) that Defendant used the trademark "in connection with any goods or services,"[10] and (3) that Defendant's use "is likely to cause confusion, or to cause mistake, or to deceive as to the affiliation, connection, or association of such person with another person, or as to the origin, sponsorship, or approval of his or her goods, services, or commercial activities by another person."[11] The parties focus their arguments on the third factor and Defendant's claim of fair use. The Court will do the same.

"Whether proceeding under § 32 or § 43(a) of the Lanham Act, 'the central inquiry is the same: whether the junior user's mark is likely to cause confusion with the senior user's mark.'"[12] The Tenth Circuit has identified six nonexhaustive factors to consider in determining whether there is a likelihood of confusion:

> (1) the degree of similarity between the competing marks; (2) the intent of the alleged infringer in adopting the contested mark; (3) evidence of actual confusion; (4) the similarity of the parties' products and the manner in which the parties market them; (5) the degree of care that consumers are likely to exercise in purchasing the parties' products; and (6) the strength of the contesting mark.[13]

"No one of the six factors is dispositive."[14] "The factors are interrelated, and the 'importance of any particular factor in a specific case can depend on a variety of circumstances,

---

[10] *Id.* § 1125(a)(1).

[11] *Id.* § 1125(a)(1)(A).

[12] *Hornady Mfg. Co., Inc. v. Doubletap, Inc.*, 746 F.3d 995, 1001 (10th Cir. 2014) (quoting *Water Pik, Inc. v. Med-Sys., Inc.*, 726 F.3d 1136, 1143 (10th Cir. 2013)).

[13] *Id.*

[14] *Id.*

including the force of another factor.'"[15]  "At all times, however, the key inquiry is whether the consumer is likely to be deceived or confused by the similarity of the marks."[16]

        1.       *Degree of Similarity Between the Marks*

"The degree of similarity between marks rests on sight, sound, and meaning."[17]  The "court must determine whether the allegedly infringing mark will confuse the public when singly presented, rather than when presented side by side with the protected trademark."[18]  "In comparing marks, 'we do not independently examine each syllable of the marks but consider the mark as a whole as they are encountered by consumers in the marketplace.'  We therefore compare the full marks, not just their components."[19]

Plaintiff argues that "the marks are virtually identical" because Defendant's use of the word "overstock" is nearly the same as Plaintiff's mark of "overstock.com."[20]  According to Plaintiff, the important fact is that both Plaintiff and Defendant use the word "overstock."  The Tenth Circuit, however, has rejected such a piecemeal approach.  In *Water Pik*, the Tenth Circuit compared the phrases "Sinu *Cleanse*" and "SinuSense," not just the words "Cleanse" and "Sense."[21]  Similarly, in *Hornady*, the Tenth Circuit evaluated the similarity of two marks—TAP and DoubleTap.  The plaintiff there argued "that the district court erred by not elevating the

---

[15] *Id.* (quoting *Water Pik*, 726 F.3d at 1143).

[16] *Team Tires Plus, Ltd. v. Tires Plus, Inc.*, 394 F.3d 831, 833 (10th Cir. 2005) (internal quotation marks omitted).

[17] *Sally Beauty Co., Inc. v. Beautyco, Inc.*, 304 F.3d 964, 972 (10th Cir. 2002).

[18] *Id.*

[19] *Hornady Mfg.*, 746 F.3d at 1002 (quoting *Water Pik*, 726 F.3d at 1155).

[20] Docket No. 29, at 32.

[21] *Water Pik*, 726 F.3d at 1156.

5

marks' one similarity—the word "tap"—above all differences."[22] The Tenth Circuit disagreed, stating that "the fact that both marks contain the syllable 'tap' does not control the similarity inquiry."[23] Thus, the fact that both parties use the word "overstock" is not determinative. Rather, the Court must consider the full marks. In addition, the Court must consider the marks as they are encountered by consumers in the marketplace. In making this comparison, the Court "must consider the effect of marketplace presentation, including 'lettering styles, logos and coloring schemes.'"[24]

In this case, Plaintiff's use of the word "overstock" is generally accompanied by its stylized "O" design, a white "O" on a red banner. Plaintiff's use of "overstock" is also accompanied by the ".com" suffix.

![overstock.com logo]

Defendant, on the other hand, does not use the stylized "O" design and does not use the ".com" suffix. In addition, Defendant, unlike Plaintiff, does not use the word "overstock" alone. Rather, Defendant uses the word "overstock" in combination with other words, such as "overstock clearance." Further, Defendant's use of the word "overstock" is generally in all caps, with no emphasis on the word "overstock." Finally, Defendant's advertisements always include a reference to "nomorerack" or include Defendant's web address: "Nomorerack.com."

---

[22] *Hornady Mfg.*, 746 F.3d at 1001–02.

[23] *Id.* at 1002.

[24] *Id.* (quoting *Universal Money Ctrs., Inc. v. AT&T Co.*, 22 F.3d 1527, 1531 (10th Cir. 1994).

6



In its Reply, Plaintiff points out that the above-described differences are limited to display advertisements. Plaintiff argues that text-based advertisements do not have these differences. However, in text-based advertisements, the domain name of the advertiser is clearly displayed, further differentiating the advertisements.

Based upon these considerations, the Court finds that there is little visual similarity between the marks. For substantially the same reasons, the Court finds that there is little aural similarity between the marks. Plaintiff's use includes the ".com" suffix, while Defendant's use does not and instead always includes a second word. Thus, using the example provided above, "Overstock.com" does not sound like "overstock clearance."

Finally, the Court finds that there is similarity in the meaning of the marks. The term "overstock" is used by both to represent the sale of discounted products. However, Plaintiff uses the term to identify its company, while Defendant uses the term to identify a type of product or sale. Yet even considering this similar meaning, there are sufficient differences between the two marks that this factor weighs in Defendant's favor.

## 2. Intent of the Alleged Infringer

"Proof that a defendant chose a mark with the intent of copying the plaintiff's mark may, standing alone, justify an inference of likelihood of confusion."[25] "The proper focus under this factor is whether defendant had the intent to derive benefit from the reputation or good will of plaintiff."[26]

Plaintiff argues that the Court can infer intent based on Defendant's knowledge of Plaintiff. However, the Tenth Circuit has recently rejected such reasoning.[27] "When we have said that evidence of intent to copy may justify an inference of likelihood of confusion, we have been referring to copying a particular *mark*, not copying a competitor's product."[28] Thus, the fact that Defendant may have been aware of Plaintiff is not enough to show intent on the part of Defendant.

Instead, there is evidence that Defendant used a number of different terms in their advertisements—such as Cyber Monday, Black Friday, Free Shipping, Blowout Sale—and settled on "overstock" because that word had the best performance.[29] As explained by Defendant's Executive Vice President and Chief Marketing Officer, "[t]he word overstock has the best performance in conjunction with a lot of other elements we use on our banners, which is

---

[25] *Sally Beauty Co.*, 304 F.3d at 973.

[26] *Id.* (quotation marks and citation omitted).

[27] *See Hornady Mfg.*, 746 F.3d at 1004 ("Whether DoubleTap's founder was aware of Hornady and its products is irrelevant to whether DoubleTap adopted its mark intending to copy the TAP mark.").

[28] *Water Pik*, 726 F.3d at 1157.

[29] Docket No. 29 Ex. H, at 128:2–18.

8

why we continue to use it."[30]  Based upon this, it appears that Defendant's motivation in using the word "overstock" was not to copy Plaintiff's mark, but rather because that term outperformed the other terms used by Defendant in marketing its products.  Whether the success of this term is based on Plaintiff's reputation and good will or some other reason is not clear.

Plaintiff also argues that Defendant "has moved away from its own green and white color scheme and essentially adopted the red-and-white color scheme employed by Overstock."[31]  In support of this argument, Plaintiff has provided evidence that Defendant used a red and white color scheme.  But there is also evidence that Defendant has used a green and white color scheme, a color scheme which matches Defendant's logo.  Based on the record before it, the Court cannot find that Defendant has moved from one color scheme to another.  Rather, the evidence reflects that Defendant has used a variety of color schemes in its advertisements.  Therefore, this evidence does not show intent.

Plaintiff further argues that intent can be inferred from Defendant's use of "overstock" after Plaintiff sent Defendant cease and desist letters.  Again, this argument has been rejected by the Tenth Circuit.  As the court explained, "[u]nder the intent factor, the alleged infringer's intent is measured at the time it 'chose' or 'adopted' its mark. In analyzing intent, we look to evidence of 'the process of choosing' a mark, not evidence of events subsequent to its adoption."[32]  Thus, the fact that Defendant has continued to use "overstock" after receiving cease and desist letters does not show intent.  Based on the above, the Court finds that this factor weighs against Plaintiff and in favor of Defendant.

---

[30] *Id.* at 128:15–18.

[31] Docket No. 29, at 34.

[32] *Hornady Mfg.*, 746 F.3d at 1004 (quoting *Water Pik*, 726 F.3d at 1159).

*3. Evidence of Actual Confusion*

"Although not necessary to prevail on a trademark infringement claim, evidence of actual confusion in the marketplace may be the best indication of likelihood of confusion."[33] However, "[w]e have consistently recognized . . . that isolated, anecdotal instances of actual confusion may be de minimis and may be disregarded in the confusion analysis."[34]

> Evidence of the number of instances of actual confusion must be placed against the background of the number of opportunities for confusion before one can make an informed decision as to the weight to be given the evidence. If there is a very large volume of contacts or transactions which could give rise to confusion and there is only a handful of instances of actual confusion, the evidence of actual confusion may receive relatively little weight.[35]

Plaintiff has received ten consumer complaints concerning Defendant and has provided over 200 complaints that have been produced by Defendant. These complaints show that some consumers who placed an order with Defendant thought that they were placing an order with Plaintiff, others thought that Defendant had somehow "hijacked" their order, other consumers believed that Defendant's ad was an ad for Plaintiff, and yet others believed that the parties were somehow affiliated. Plaintiff contends that these instances of actual confusion are sufficient to overcome the de minimis threshold. However, a close examination of Plaintiff's examples of

---

[33] *Sally Beauty Co., Inc.*, 304 F.3d at 974.

[34] *Water Pik*, 726 F.3d at 1150 (stating that four instances of actual confusion constituted de minimis evidence); *see also Hornady Mfg.*, 746 F.3d at 1005 (finding "that a handful of instances [of actual confusion] over ten years" to be de minimis); *King of the Mountain Sports, Inc. v. Chrysler Corp.*, 185 F.3d 1084, 1092–93 (10th Cir. 1999) (finding that seven instances of actual confusion was de minimis); *Universal Money Ctrs.*, 22 F.3d at 1535 (disregarding evidence that plaintiff's employees had received a number of accounts of customer confusion).

[35] 4 J. Thomas McCarthy, McCarthy on Trademarks and Unfair Competition § 23:14 (4th ed. 2014).

actual confusion belies Plaintiff's contention and, as stated, the examples of actual confusion must be put in the proper context.

To be sure, Plaintiff has provided evidence of actual confusion. However, there is also evidence from among those cited to the Court where consumers clearly recognized the distinction between Plaintiff and Defendant. For example, one consumer noted that "[s]ome items listed on Nomorerack.com are cheaper than the same items that Overstock.com has" and that they found "better pricing on nomorerack.com."[36] Thus, not all of Plaintiff's evidence of actual confusion actually shows any confusion on the part of the consumer.

Even considering the evidence of actual confusion, it must be put in proper context. Both parties tout that they have millions of customers and make millions of sales per year. Thus, relative to the total volume of sales, the limited evidence of actual confusion provides little weight.

Plaintiff argues that "the denominators used by Nomorerack in its calculations are meaningless because, *inter alia*, there is no evidence of the numbers of consumers who actually saw and could have been confused by Nomorerack's infringing advertisements."[37] At oral argument, Plaintiff emphasized that this evidence is not intended to provide a clear picture of the instances of actual confusion.

This argument, however, cuts against Plaintiff. Plaintiff bears the burden of proof on this matter. Plaintiff has not engaged in any meaningful analysis concerning the evidence of actual confusion. At most, Plaintiff has provided a handful of complaints evidencing confusion. The

---

[36] Docket No. 29 Ex. M.

[37] Docket No. 41, at 23.

Tenth Circuit has stated "that isolated, anecdotal instances of actual confusion may be de minimis and may be disregarded in the confusion analysis."[38] Because Plaintiff has only provided a limited number of instances of actual confusion, the Court finds that this factor weighs against Plaintiff.

### 4. Relation in Use and the Manner of Marketing

"The greater the similarity between the products and services, the greater the likelihood of confusion."[39] The Court is to consider "(1) the similarity of the products and (2) the similarity in the manner of marketing the products."[40]

Both parties sell a wide variety of products. Though Plaintiff provides a more diverse range of products and services, the parties sell a number of similar products and they are direct competitors in those areas. In addition, both parties sell their products in the same way. They also market and advertise their products in largely the same way. Therefore, the Court finds that this factor weighs in favor of Plaintiff.

### 5. Degree of Care

"A consumer exercising a high degree of care in selecting a product reduces the likelihood of confusion."[41] "[B]uyers typically exercise little care in the selection of inexpensive items that may be purchased on impulse."[42] "Accordingly, items purchased on impulse are more

---

[38] *Water Pik*, 726 F.3d at 1150.

[39] *Sally Beauty Co., Inc.*, 304 F.3d at 974 (quotation marks and citation omitted).

[40] *Id.*

[41] *Id.* at 975.

[42] *Beer Nuts, Inc. v. Clover Club Foods Co.*, 805 F.2d 920, 926 (10th Cir. 1986) (internal quotation marks omitted).

12

likely to be confused than expensive items, which are typically chosen carefully."[43] However, the Tenth Circuit does not take a "price-determinative approach."[44] Rather, "[t]he relevant inquiry focuses on the consumer's degree of care exercised at the time of purchase."[45]

Plaintiff argues that both parties offer a range of relatively inexpensive items, which may result in consumers exercising little care. Plaintiff further argues that Defendant offers short-term sales, which increases the likelihood of customer confusion "because consumers will be acting quickly to take advantage of the deal that is offered, without taking the time to carefully examine the source of the offer."[46]

While it is true that both parties offer inexpensive items, Plaintiff also offers a number of expensive items. Plaintiff has stated that "Overstock's product offerings range from a $5.00 nail polish to a one-of-a-kind handmade Persian rug for hundreds of thousands of dollars."[47] Further, Plaintiff's Vice President of Marketing has stated that a high percentage of Plaintiff's customers engage in comparison shopping.[48] Indeed, Plaintiff prices it products "assuming people are comparison shopping" and for this reason, Plaintiff seeks to "price lower than [its] competitors."[49]

Both parties offer a wide variety of products. While some of those products may be inexpensive items purchased on impulse, a number of those items do not fall into this category.

---

[43] *Sally Beauty Co., Inc.*, 304 F.3d at 975.

[44] *Hornady Mfg.*, 746 F.3d at 1006.

[45] *Sally Beauty Co., Inc.*, 304 F.3d at 975.

[46] Docket No. 29, at 39.

[47] *Id.* at 11.

[48] Docket No. 34 Ex. D, at 25:2–26:11.

[49] *Id.* at 26:12–20.

Further, the relative expense of the product is not the relevant inquiry, but instead the degree of care exercised by the consumer. Because both parties purport to offer items at discounted prices, the Court believes that consumers will exercise care to find the best price for the product they seek to purchase, rather than purchasing the item on impulse. Therefore, the Court finds that this factor weighs in favor of Defendant.

### 6. *Strength or Weakness of the Mark*

"The stronger the mark, the greater the likelihood that encroachment on the mark will cause confusion."[50] "Strength consists of both conceptual strength, which refers to the placement of the mark along the distinctiveness spectrum, and commercial strength, which refers to the marketplace recognition value of the mark."[51]

#### *a. Conceptual Strength*

"Conceptual strength is measured on a spectrum of distinctiveness ranging along the following five categories (from least to most distinctive): (1) generic, (2) descriptive, (3) suggestive, (4) arbitrary, and (5) fanciful."[52]

> A mark is generic if it is a common description of products and refers to the genus of which the particular product is a species. A mark is descriptive if it describes the product's features, qualities, or ingredients in ordinary language or describes the use to which the product is put. A mark is suggestive if it merely suggests the features of the product, requiring the purchaser to use imagination, thought, and perception to reach a conclusion as to the nature of the goods. An arbitrary mark applies a common word in an unfamiliar way. A fanciful mark is not a real word at all, but is invented for its use as a mark.[53]

---

[50] *Sally Beauty Co., Inc.*, 304 F.3d at 975.

[51] *Utah Lighthouse Ministry v. Found. for Apologetic Info. & Research*, 527 F.3d 1045, 1056 (10th Cir. 2008).

[52] *Hornady Mfg.*, 746 F.3d at 1007.

[53] *Lane Capital Mgmt., Inc. v. Lane Capital Mgmt., Inc.*, 192 F.3d 337, 344 (2d Cir. 1999).

14

"Only suggestive, arbitrary, and fanciful marks are considered strong in and of themselves."[54]

Plaintiff argues that its marks are conceptually strong because it has an incontestable federally registered mark in OVERSTOCK.COM. However, the Tenth Circuit has noted that "'[t]he fact that a trademark is the subject of a federal registration that has ripened into incontestable status should not dictate the conclusion that the mark is strong with no further analysis.'"[55] Thus, whether Plaintiff's trademark is incontestable does not end the Court's analysis. The Court must go on to determine whether Plaintiff's marks are strong using the factors set forth above.

The parties dispute whether Plaintiff's marks are descriptive or suggestive.

> The determination whether a mark is descriptive or suggestive is difficult, and we have endorsed a helpful test for distinguishing between the two categories: suggestive terms "require the buyer to use thought, imagination, or perception to connect the mark with the goods," whereas descriptive terms "directly convey to the buyer the ingredients, qualities, or characteristics of the product."[56]

"The determination is often based on intuitive reactions rather than analytical reasoning."[57]

Though a close question, it appears that Plaintiff's marks fall on the side of descriptive. Plaintiff's use of the word "overstock" conveys the characteristics of its products, specifically that the goods it sells are excess or surplus inventory. The use of "overstock" in this manner is consistent with Plaintiff's founding. Plaintiff has explained that "Overstock originally began as an Internet-based liquidator of excess or surplus inventory."[58]

---

[54] *Hornady Mfg.*, 746 F.3d at 1007.

[55] *Vail Assoc., Inc. v. Vend-Tel-Co., Ltd.*, 516 F.3d 853, 867 (10th Cir. 2008) (quoting 2 McCarthy on Trademarks and Unfair Competition § 11:82).

[56] *Hornady Mfg.*, 746 F.3d at 1007 (quoting *Water Pik*, 726 F.3d at 1152–53).

[57] *Educ. Dev. Corp. v. Econ. Co.*, 562 F.2d 26, 29 (10th Cir. 1977).

[58] Docket No. 29, at 4.

Plaintiff argues that its marks are not merely descriptive because consumers must use thought and imagination to connect the marks to the goods and services offered by Plaintiff and that the marks do not convey the variety of services now offered by Plaintiff. However, for a mark to be descriptive, it "need not directly convey all of a product's characteristics, uses, or functions but need only impart directly a crucial, important aspect of the product."[59] In this instance, the use of "overstock" conveys that the products sold are excess or surplus inventory.

### b. *Commercial Strength*

"Commercial strength is 'the marketplace recognition value of the mark.'"[60] "Commercial strength is a concept analogous to secondary meaning."[61] The Tenth Circuit has

> identified several factors as helpful in evaluating secondary meaning, including direct evidence of recognition by consumers and circumstantial evidence regarding: (1) the length and manner of the mark's use, (2) the nature and extent of advertising and promotion of the mark, and (3) the efforts made to promote a conscious connection, in the public's mind, between the mark and a particular product.[62]

Plaintiff has presented evidence to support a finding that its mark is commercially strong. There is evidence showing that consumers associate the mark "overstock.com" and the word "overstock" with Plaintiff. For example, a study commissioned by Plaintiff shows that approximately 73% of United States consumers and 89% of online shoppers had heard of Overstock.com or "the Big 'O.'"[63] Additionally, Plaintiff has presented evidence of the nature and extent of its advertising efforts to promote the mark, and their efforts to connect the mark to

---

[59] *Educ. Dev. Corp.*, 562 F.2d at 29.

[60] *Water Pik*, 726 F.3d at 1153 (quoting *King of the Mountain*, 185 F.3d at 1093).

[61] *Id.*

[62] *Hornady Mfg.*, 746 F.3d at 1008.

[63] Docket No. 41 Ex. B-3.

16

its company. Based upon this evidence, the Court finds that Plaintiff's mark is commercially strong.

"Evidence of a mark's commercial strength can make up for conceptual weakness because a conceptually weak mark may become strong by virtue of acquired consumer awareness."[64] Because of the mark's commercial strength, the Court finds that this factor weighs in Plaintiff's favor.

### 7. Conclusion on Likelihood of Confusion

As set forth above, two factors—strength of the mark and similarity of products and marketing—favor Plaintiff. The remaining factors favor Defendant. While "[t]he tilt of the scales does not determine the issue,"[65] those factors favoring Defendant demonstrate that consumers are not likely to be confused by Defendant's use of the word "overstock." In addition, Plaintiff carries a difficult burden and must show that this factor, along with all of the others, weighs heavily and compellingly in its favor. The Court finds that Plaintiff has failed to meet that burden. Therefore, Plaintiff has not shown a likelihood of success on the merits.

### 8. Fair Use

In addition to arguing that Plaintiff cannot show a likelihood of confusion, Defendant argues that its use of the word "overstock" constitutes fair use. "The 'fair use' defense permits the use of a name or term, *other than as a trademark*, that is descriptive and is used fairly and in good faith only to describe the goods."[66] Fair use is an affirmative defense "as it allows a defendant to avoid liability even where the plaintiff has proved likelihood of confusion and the

---

[64] *Water Pik*, 726 F.3d at 1153.

[65] *Hornady Mfg.*, 746 F.3d at 1008.

[66] *Beer Nuts, Inc. v. Clover Club Foods Co.*, 711 F.2d 934, 937 (10th Cir. 1983).

17

other elements of a prima facie case of infringement."[67] To prove the affirmative defense of fair use, Defendant must establish: (1) Defendant is not using the term "overstock" as a trademark or service mark, (2) "overstock" is descriptive of the goods or services of Defendant, and (3) that such descriptive use is fair and made in good faith.[68]

Though the Court need not determine this issue for the purposes of resolving this Motion, the Court notes that Defendant has presented compelling evidence that its use of the term "overstock" constitutes fair use. Specifically, Defendant has presented evidence that it is not using the term "overstock" as a trademark or service mark, that the term "overstock" is descriptive of the goods sold by Defendant, and that Defendant's use is fair and made in good faith. Therefore, the Court will deny Plaintiff's request for injunctive relief for this additional reason.

B.  REMAINING FACTORS

Plaintiff argues that it will suffer irreparable harm if the injunction is not issued because it is suffering damage to its reputation based upon consumer confusion. However, as discussed above, the instances of actual confusion are minimal, especially considering the large volume of sales made by the parties. Plaintiff also argues that it is suffering harm because it has lost customers to Defendant. However, there is scant evidence that Plaintiff has lost customers due to confusion. There are a variety of other factors, such as cost and product selection, which could explain the decision of a consumer to purchase from Defendant rather than Plaintiff. Thus, the Court finds that Plaintiff has failed to meet its burden on this factor.

---

[67] *Health Grades, Inc. v. Robert Wood Johnson Univ. Hosp., Inc.*, 634 F. Supp. 2d 1226, 1240 (D. Colo. 2009).

[68] *Coherent, Inc. v. Coherent Tech., Inc.*, 736 F. Supp. 1055, 1061 (D. Colo. 1990).

On the other hand, Defendant has shown that it will suffer harm if the injunction is granted. The Court finds persuasive Defendant's argument that granting the injunction will require it to stop using one of its most effective advertising campaigns, thereby resulting in harm. Therefore, the Court finds that this factor weighs against granting an injunction.

Finally, because Plaintiff cannot prevail on the remaining factors, it has failed to show that the proposed injunction is in the public interest. Therefore, the Court finds that this factor also weighs against granting the injunction.

## IV. CONCLUSION

It is therefore

ORDERED that Plaintiff's Motion for Preliminary Injunction (Docket No. 29) is DENIED. It is further

ORDERED that Defendant's Motion for Leave to File Surreply (Docket No. 47) is GRANTED.

DATED this 30th day of June, 2014.

BY THE COURT:

Ted Stewart
United States District Judge